85 N.J. Super. 417 (1964)
204 A.2d 902
HACKENSACK HOSPITAL, PLAINTIFF-RESPONDENT,
v.
YAROSLAV TIAJOLOFF, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 5, 1964.
Decided November 18, 1964.
*418 Before Judges GAULKIN, FOLEY and COLLESTER.
Mr. Howard E. Corbett argued the cause for respondent (Messrs. Winne & Banta, attorneys).
Mr. Yaroslav Tiajoloff, appellant, pro se.
PER CURIAM.
Plaintiff hospital sued defendant in the County district court upon four alternative counts, each for $106.35. One count was upon a book account; another "for the reasonable value of goods sold and delivered and services rendered * * * on the defendant's promise to pay a reasonable price for the same * * *"; a third upon an express promise to pay $106.35; and the last upon an account stated. Defendant, appearing pro se, wrote a letter to the clerk of the court, denying all the allegations of the complaint. Later he filed a more detailed answer, together with a notice of motion for leave to file a counterclaim. The motion for leave to file a counterclaim was properly denied by the trial judge, and to that extent the judgment now before us is affirmed.
The case was tried without a jury or stenographer. From the state of the case settled by the court, pursuant to R.R. 1:6-3 and 7:16-3, we learn that
"The defendant Yaroslav Tiajoloff testified that he did not make any contract, either written or oral, with the plaintiff. He further testified that in May 1962 his daughter suddenly became ill; that he did not have a family physician and that he and his wife took his daughter to a Dr. Johnson in Hackensack; that Dr. Johnson was not in at the time and the doctor's nurse told the defendant to take the child to the Hackensack Hospital. He further testified that when he arrived at the hospital he took his child to the clinic in the rear of the hospital and was told by some one that she would require hospitalization; that some one then told him there would be a charge or a bill rendered for services in connection with his daughter and he then demanded to have the child returned to him, but that the door was shut in his face and he was refused the return of his child. The defendant further testified that he had a conversation with a Mr. Bell, an employee of the Hackensack Hospital, at the time when the child was taken to the hospital and that said Mr. Bell told the defendant not to worry about any bill and that the defendant would not be required to pay the hospital bill for 100 years. Defendant further *419 testified that inasmuch as the 100 years had not expired he was not legally required to pay monies involved in the present suit. Defendant further testified that despite his attempts to obtain the release of his child immediately after bringing her to the hospital, he finally put sufficient pressure on the hospital to return the child on May 27, 1962."
The court found:
"* * * that the book account marked p-1 in evidence accurately reflects the charges to the defendant for the hospital services rendered in the usual course of business of the plaintiff hospital, totaling the sum of $106.35. The Court further finds that services were rendered in the care of the defendant's infant child at the defendant's express or implied request in bringing the child to the hospital for the services to be rendered by said hospital. The rendition of services at the request of another, under circumstances which negative the idea that they were gratuitous, creates an obligation implied from the request to pay what the services are reasonably worth." (Emphasis ours)
The hospital concedes that it offered no evidence other than the copy of the book account, and no proof of the items or their reasonable value beyond that reported by the trial judge as follows:
"Louis Giammarino testified that he was employed as comptroller for the plaintiff Hackensack Hospital and was in charge of and familiar with the books and records of the Hospital. He produced a hospital bill for services rendered for the hospital care of Alexandria Tiajoloff, the 15 months old child of the defendant for the period from May 25, 1962 to May 27, 1962 in the sum of $106.35, which has been forwarded to the defendant at his home address, 351 Central Avenue, Hackensack, New Jersey. The book account marked P-1 in evidence revealed a total charge from the plaintiff to the defendant for $106.35 of which no part had been paid. Upon the conclusion of the direct examination of Louis Giammarino the defendant stated that he did not desire to cross-examine the plaintiff's witness."
It appears that P-1 was a copy of the bill sent to defendant.
We hold that a hospital may prove the services which it rendered to a patient by its books of account, pursuant to the Uniform Business Records As Evidence Act, N.J.S. 2A:82-34 et seq. However, when the reasonable value of those services is placed in issue, as it was here, the books of account *420 alone usually cannot supply that proof. 1 C.J.S. Account, Action on § 15, p. 604 (1936); W.H. Davis Die Co. v. Beltzhoover Electric Co., 40 Ohio App. 308, 178 N.E. 418 (1931); Drennan v. Burns, 88 Misc. 17, 150 N.Y.S. 63 (Sup. Ct. App. T. 1914); cf. J.D. Streett & Co. v. Bone, 334 S.W.2d 5 (Mo. Sup. Ct. 1960). The New York statute relating to business records as evidence contains a special provision relating to proof of a hospital bill, making it "admissible in evidence" and "prima facie evidence of the facts contained, provided it bears a certification by the head of the hospital or by a responsible employee in the comptroller's or accounting office that the bill is correct, that each of the items was necessarily supplied and that the amount charged is reasonable." However, the statute expressly provides that it does not apply "in any action instituted by or on behalf of a hospital to recover payment for accommodations or supplies furnished or for services rendered by or in such hospital * * *." 7B New York CPLR Rule 4518(b), p. 412.
The following is a copy of P-1, the book account:

"TIAJOLOFF ALEXANDRA 26OSP 23 308 227 Acct. No.
 351 Central Ave Hackensack D12 2985 308227
Bill To
---------------------------------------------------------------------------
 Admitted
 5-25-62
---------------------------------------------------------------------------
 Discharged
 5-27-62
---------------------------------------------------------------------------
 May 29-62 Hosp. Care ............ B[*] 46.00
 May 29-62 ....... Pharmacy B[*] 1.75
 May 29-62 ....... Telephone B[*] 0.10
 May 29-62 ....... Misc. B[*] 42.50
 May 29-62 ....... Pharmacy B[*] 1.50
 May 29-62 Lab'ratory ............ B[*] 4.50
(emergency room May 29-62 Dispens ................. B[*] 10.00 [*]106.35"
(medication

We note, but lay aside as probably unimportant, that all items in the book account are dated May 29 although the child was hospitalized from May 25 to 27. More important is the fact that the trial judge was afforded no means of determining *421 the value of the services. Indeed, there is no proof whatever even as to the identity of the second largest item  "Misc. $42.50." Since one can not tell what "Misc." was, it can not be determined what it was worth.
For the foregoing reasons, the judgment of $106.35 in favor of the plaintiff must be set aside and a new trial ordered. No costs.