236 N.J. Super. 73 (1989)
564 A.2d 130
BLAKE CONSTRUCTION, PLAINTIFF,
v.
RAYMOND W. PAVLICK AND CAROL PAVLICK, DEFENDANTS.
Superior Court of New Jersey, Law Division Special Civil Part, Bergen County.
Decided June 2, 1989.
*75 Anthony J. Giampapa for plaintiff.
Beverly Wurth for defendants.
HARRIS, J.S.C.
This case picks up where Huffmaster v. Robinson, 221 N.J. Super. 315 (Law Div. 1986) ends. It involves a claim by a home improvement contractor against owners of residential real property seeking contract damages for failure to pay for construction work allegedly completed. Defendants had filed a counterclaim alleging their entitlement for overpayments made to the contractor. The answer and counterclaim neither sought affirmative damages under the Consumer Fraud Act, N.J.S.A. 56:8-1 et seq., (the "act") nor contained any consumer, fraud-related affirmative defenses such as set-off or recoupment. At the conclusion of defendants' case, they withdrew their counterclaim in its entirety. Nevertheless, the court shall deny plaintiff any enforcement capacity and the complaint shall be dismissed, notwithstanding what may be characterized as substantial good-faith performance by plaintiff.[1]

*76 Findings of Fact.

Defendants own real property in Garfield, New Jersey consisting of a brick and frame 2 1/2-story structure. The first floor is improved with a tavern and liquor store. The second and third floors are occupied by defendants and their family as a dwelling. Defendants own and operate the tavern and liquor store below their living quarters. Defendants suffered catastrophic damage as a result of a fire on the third floor which caused substantial water and smoke damage to the other floors of the building.
Plaintiff is a local home-improvement contractor which is owned and operated by a former friend of defendants. Plaintiff and defendants entered into a written construction contract in March 1986, consisting of two pages, with a third page being unsigned addendum for the complete renovation and restoration of the second and third floors of defendants' building. Some incidental construction work was supposed to be performed by plaintiff on the first floor, but the lion's share of reconstruction in the tavern and liquor store was to be done by others. In an effort to keep costs under control, and given the then-warm relationship between plaintiff's owner and defendants, defendants were permitted to contribute a substantial amount of sweat-equity, and toiled alongside plaintiff's workers in the renovation and restoration process.
During the construction, "extras" in the amount of $7,509.31 were allegedly ordered and authorized by defendants, and installed or otherwise performed by plaintiff. These included extra demolition, doors, trim, and scavenger service. Disputes arose between the parties during the construction concerning the ability of defendants to make progress payments towards the contract, and the timeliness of plaintiff's performance. Plaintiff claims that defendants were woefully underinsured for *77 the fire loss[2] and their scrimping made plaintiff an involuntary unsecured debtor to the point where plaintiff claims it could not pay its subcontractors. This, according to plaintiff, constituted a breach by defendants which permitted plaintiff to walk off the job. Cf. Vinen Corp. v. Alan W. Nau Contracting, 232 N.J. Super. 589 (App.Div. 1989).
Defendants contend that plaintiff abandoned the job voluntarily by simply refusing to appear to complete the work. This, defendants claim, was due to other more pressing jobs and concerns of plaintiff.
The total written contract (including the addendum) which was signed by both parties amounted to $59,146.46, exclusive of extras. There was neither a contemporaneous memorialization of the extras, nor any other written authorization or contract signed by defendants to enable plaintiff to proceed with the extras.
Plaintiff claims that defendants paid it $59,112.22, and after giving defendants various credits for certain incomplete work, plaintiff claims entitlement to $4,444.07.
Plaintiff produced the construction code official of the City of Garfield as one of its witnesses. He testified, among other things, that the nature of the damage to the building required that it be treated, under the Uniform Construction Code, N.J.S.A. 52:27D-119 et seq., as new construction.[3]

Conclusions of Law.
Once again it is necessary to repeat that the legislative history demonstrates that the Consumer Fraud Act is intended *78 to be one of the strongest consumer protection laws in the nation. New Mea Construction Corp. v. Harper, 203 N.J. Super. 486 (App.Div. 1985); Huffmaster v. Robinson, supra, 221 N.J. Super. at 319. The New Jersey policy is one of strong consumer protection. In the same way that our courts protect tenants under the Rental Security Deposit Act, N.J.S.A. 46:8-19 et seq., by applying its provisions whether pleaded or not, so too, should courts be vigilant in enforcing strong expressions of public policy even where the parties themselves do not expressly seek either their protection or make an effort to ascertain their rights.
The purpose of ensuring fidelity to the principles of the Consumer Fraud Act and the administrative regulations promulgated thereunder is to promote the act's deterrent effect to prevent unscrupulous acts against the protected class. However, the statute and its regulations also serve the salutary purpose of forcing home improvement contractors to provide forthright and timely disclosures which, for example, if plaintiff had provided here, might have obviated the need for court intervention by derailing the dispute. The facts of this case manifestly demonstrate how, if the statute and regulations were followed, there probably would have been no misunderstanding between the parties and the need for litigation might have evaporated.
N.J.S.A. 56:8-2 provides, in pertinent part, that the use or employment by any person of an unconscionable commercial practice or deception in connection with the sale of any merchandise whether or not any person has in fact been mislead, deceived, or damaged thereby, is declared to be an unlawful practice. Merchandise is defined in the statute to include "goods ... services or anything offered, directly or indirectly to the public for sale." N.J.S.A. 56:8-1(c).
*79 N.J.A.C. 13:45A-16.2(a)[4] provides that:
[U]tilization by a seller of the following acts and practices involving the sale, attempted sale, or performance of home improvements shall be unlawful thereunder:
....
12. Home improvement contract requirements  writing requirement: All home improvement contracts for a purchase price in excess of $25.00, and all changes in the terms and conditions thereof shall be in writing. Home improvement contracts which are required by the subsection to be in writing, and all changes in the terms and conditions thereof, shall be signed by all parties thereto, and shall clearly and accurately set forth in legible form all terms and conditions of the contract....
N.J.A.C. 13:45A-16.1 defines a home improvement contract as follows:
An agreement between a seller and an owner of residential or non-commercial property, or a seller and a tenant or lessee of residential or noncommercial property, if the tenant or lessee is to be obligated for the payment of home improvements made in, to, or upon such property, and includes all agreements under which the seller is to perform labor or render services for home improvements, or furnish materials in connection therewith.
The regulation defines "residential or non-commercial property" as:
a structure used, in whole or in substantial part, as a home or place of residence by any natural person, whether or not a single or multi-unit structure, and that part of the lot or site on which it is situated and which is devoted to the residential use of the structure, and includes all appurtenant structures. [Emphasis supplied]
The court finds that the nature of the property upon which plaintiff was to perform its contract is "residential or non-commercial property" as it clearly is used in substantial part as a home or place of residence by defendants. The mere fact that the ground-level first floor is being used as a tavern and liquor store does not detract from the character of the property under this regulation. Moreover, plaintiff's contract was directed primarily at the residential and noncommercial *80 aspects of the property and plaintiff may not immunize itself from compliance with these regulations by reference to the other nonresidential uses to which the property is devoted.
Plaintiff has clearly failed to comply with the requirement that all changes in the home improvement contract be in writing and signed by the parties. Its good faith in relying upon oral authorization makes no difference. The rationale expressed by Judge Haines for depriving a technically-violating provider of services of any enforcement capacity need not be repeated here. Huffmaster, supra, clearly delineates the policy considerations and principles which this court finds entirely appropriate and applicable.[5]See Huffmaster, supra, 221 N.J. Super. at 321-322.
In the same way that an automobile repairman may be deprived of its contractual enforcement capacity, so, too, is plaintiff home-improvement contractor deprived of the right to enforce its contract for extras. The extras were not reduced to a signed contemporaneous writing and, therefore, any contract claimed in support of them is void. What this teaches is that every home improvement contract, including the addendum and an authorization for extras, must be in writing and signed by the parties. If this means that home improvement contractors must keep a pad of pre-printed forms on the job to be initialled to authorize field changes, that is but a small price to pay for enhancing the understanding between the contractor and its customers. The facts of this case clearly reveal that if that simple act were done, there probably would have been no misunderstanding. The essence of the problem here is that defendants believed that the "extras" were already included in the base contract. When they were confronted with bills *81 for the so-called extras, they understandably balked. If the contractor had, prior to beginning work on the extras, negotiated a price and received written authorization therefor, the homeowner would have had full disclosure and would have had little about which to complain.

Conclusion.
In light of plaintiff's failure to comply with the simplest of ministerial acts, it has deprived itself of a remedy to which it otherwise might have been entitled. Its blunder will not be undone by the court. The complaint shall be dismissed. In light of the voluntary dismissal of defendant's counterclaim,[6] neither party shall be responsible for costs.
NOTES
[1] The court considers DiNicola v. Watchung Furniture's Country Manor, 232 N.J. Super. 69 (App.Div. 1989) to be inapposite. In DiNicola the Appellate Division refused to apply the penalty provisions of the Consumer Fraud Act in a simple breach of warranty sales case. The instant situation is wholly unlike the ordinary sale of furniture. The issues in Huffmaster, supra, are perfectly analogous to the instant situation, and were foreign to and outside the scope of the DiNicola litigation.
[2] Defendants do not dispute this, but assert that they had alternate available funds at all times to pay plaintiff.
[3] The construction official did not elaborate upon the consequences of his treating the reconstruction as "new." Perhaps this meant that the building was required to be built in conformity with existing building codes. Plaintiff claims that the characterization of "new," takes the case outside the Consumer Fraud Act. The court rejects this analysis.
[4] The court finds that these administrative regulations promulgated pursuant to N.J.S.A. 56:8-4 properly advance the public policy of the act, and do not extend its reach beyond what was reasonably anticipated by the Legislature.
[5] The court is well aware that a savvy consumer may use this decision as a sword against an unwitting contractor. When and if that occurs, the court will be vigilant to prevent an injustice. However, if home improvement contractors employ the discipline and good business practices mandated by the regulations, that situation will only rarely, if ever, occur.
[6] Had defendant pursued its counterclaim with appropriate proofs, it might have been entitled to recover the excess payments made, if any, toward the addendum.