689 A.2d 852

ALBERTO MARASCIO D/B/A A.M. ELECTRIC, PLAINTIFF–
RESPONDENT, v. NICHOLAS CAMPANELLA,
DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted January 6, 1997—Decided March 20, 1997.

Before Judges PETRELLA, WALLACE and KIMMELMAN.

*Slattery McElwee & Jespersen,* attorneys for appellant (*Kevin R. Jespersen,* on the brief).

*Howard M. Kaplan,* attorney for respondent (*Paul L. Shapiro,* of counsel; *Rachel D. Kaplan,* on the brief).

The opinion of the court was delivered by

PETRELLA, P.J.A.D.

This is a contract case arising out of the renovation of an apartment and office building in Montclair, New Jersey, owned by a corporation. After a bench trial, the judge entered judgment in favor of Plaintiff Alberto Marascio, doing business as A.M. Electric (Marascio), against defendant Nicholas Campanella, holding him personally liable for the sum of $7,208 as the amount due for certain "extra" repairs to the corporation's property.

Campanella, one of two shareholders of S & N Realty (S & N), the corporation that owns the subject property, appeals. He argues that (1) the Consumer Fraud Act (the Act) bars any recovery by Marascio; (2) the purported oral contract is unenforceable because Marascio and Campanella did not agree to an essential term; (3) Marascio presented insufficient evidence to support a claim for *quantum meruit;* (4) Marascio's claims were against S & N, and therefore, the trial judge erred by entering judgment against Campanella personally; and (5) the trial judge's findings are manifestly wrong, requiring reversal.

Campanella and his partner, Sidney Wilchens, each own a 50% interest in S & N. The property contains a three-story building with an office on the first floor and apartments on the second and third floors. On October 1, 1991, S & N contracted in writing with Judd Latona of Latona Construction Company, a general contractor, to renovate the building. Marascio, an electrician, was hired by Latona as a subcontractor to complete the necessary electrical work associated with the renovation under Latona's contract with

S & N. Marascio was paid $24,000 by Latona for the work he completed as the subcontractor.

Marascio claims that because of mistakes or omissions on the blueprints (which were not allowed into evidence), extra electrical work was necessary. According to Marascio, Campanella visited the property every day to check the progress of the work and that during these visits Campanella routinely instructed Marascio to complete the "extra" work. Campanella denied this. Marascio claimed that this extra work included putting missing washers in the kitchens, better lighting in the apartments, additional switches, running cable T.V. and telephone wires, additional lighting in the office, exterior lighting, and an intercom system.

Marascio asserted that Campanella was to pay him directly, based, in part, upon claimed past dealings when Campanella supposedly paid Marascio for similar work at another location. At the 1996 trial Marascio presented three hand-written invoice slips, all dated April 15, 1992, containing defendant's name and that of S & N, totaling $7,208, and purporting to describe the extra work he performed. Marascio also testified that when he presented these invoices to Campanella, Campanella told him that he would get paid some time in the future because he was having problems with the general contractor. Marascio claims he went to Campanella's office two or three times, and finally Campanella told him not to come back and to contact his lawyer if he had questions about getting paid. Marascio asserted that when he contacted Campanella's attorney he was told to wait and he would get paid eventually.

Campanella testified that he was not sure whether Marascio ever did work for him at any other location, presumably to rebut Marascio's claim that he knew he was to pay Marascio directly based on their prior dealings. According to Campanella's testimony, Latona did not complete the agreed work, and Campanella and his partner had to pay an additional $80,000 to other contractors to complete the work Latona failed to perform. He also said that an architect was supervising the work who would certify that the

work was being completed and that based on such certifications the general contractor would be paid. Campanella, whose office was three doors from the work site, said he only visited the building once every three or four weeks.

Campanella testified he never asked Marascio to do extra work and that the telephone wires and cable television wires Marascio claims to have installed were actually installed by Arrow Communications and the cable company, and that he had invoices to prove it. Campanella further testified that the majority of the work that was not completed by Latona was electrical in nature and that a second contractor, AMF Contracting, was hired to complete much of the work Marascio claims he performed as extras. Specifically, Campanella claimed that the receptacles for the washers and dryers in the basement were part of the original contract with Latona, yet Marascio was claiming he performed that work as extras. However, the judge erroneously precluded defendant from introducing proof as to that fact through the actual invoices which Campanella said he had in fact paid. Campanella also testified that he paid AMF Contracting to install the intercom system and the exterior lighting and that Arrow Communications installed the phone lines. The trial judge sustained Marascio's objection to Campanella's attempt to admit into evidence the plans and specifications from the original contract with Latona, apparently believing that they were irrelevant to Marascio's claim that he contracted with Campanella for extra work. The court also excluded from evidence, even prior to any objection, invoices showing that Campanella contracted with others to complete some of the work Marascio claims he performed, concluding that it was all inadmissible hearsay.

Campanella testified that Latona was paid through either S & N checks or through his personal funds advanced on behalf of the corporation as loans. During cross-examination Campanella said that the money always came from S & N, but that it had no income, so he and his partner would lend it money to pay its bills.

The trial judge rejected Campanella's assertion that Marascio is precluded under the Act from enforcing any alleged oral contract for extra electrical work, reasoning that the property was not residential and the Act was not applicable because Campanella was not a home owner or occupant of the premises, but was involved in an "investment situation." Notwithstanding S & N's corporate status, the judge ruled that Marascio completed the alleged repairs, with a claimed balance due of $7,208, and that Campanella personally agreed to pay for such repairs.

## I.

We are hampered in our review of this appeal by a meager record and some overly restrictive evidentiary rulings made without consideration of relevant exceptions to the hearsay rule. Assuming the existence of sufficient evidence of an oral contract between Campanella and Marascio, the judge's holding that the Consumer Fraud Act, *N.J.S.A.* 56:8–1 *et seq.*, does not apply to that contract was nonetheless erroneous. We conclude, for reasons hereinafter stated, that the Act precludes enforcement of the oral home improvement contract.

The Act and its implementing regulations require any home improvement contract exceeding $200 [1] in value to be in writing. Although Campanella denies any agreement with Marascio for extra work, he alternatively argues that the Act precludes Marascio from enforcing any oral contract that may have existed between him and Marascio because there was no writing as required by *N.J.A.C.* 13:45A–16.2(a)(12). Campanella contends that home improvement for purposes of the Act includes any renovation or repair to a "residential or non-commercial property," including property that has both a residential and commercial use. He further asserts that allowing Marascio to recover based upon

---

[1] At the time Marascio performed the work for Campanella the threshold amount under *N.J.A.C.* 13:45A–16.2(a)(12) was $100; however, a 1995 amendment raised the amount to $200. *See* 27 *N.J.R.* 3566(a) (September 18, 1995).

Marascio's allegation that Campanella verbally agreed to pay for the extra work, would contravene the purposes of the Act and permit contractors to engage in "sharp and unfair dealings."

Marascio, relying on *Hambright v. Yglesias*, 200 *N.J.Super.* 392, 395, 491 *A.*2d 768 (App.Div.1985), contends that we should consider the nature of the ownership as well as the use of the property when determining whether a particular property is residential or commercial. He reasons that an apartment building in which the owner does not reside, such as the property here, constitutes a commercial property. Marascio contends that *Blake Construction v. Pavlick*, 236 *N.J.Super.* 73, 564 *A.*2d 130 (1989), *overruled on other grounds by, R. Wilson Plumbing v. Wademan*, 246 *N.J.Super.* 615, 588 *A.*2d 444 (App.Div.1991), upon which Campanella relies, only considered the building in that case as residential property because the defendants lived in the building.

■ Thus, the issue before us is whether a commercially owned, unoccupied, part residential, part commercial property qualifies as a residential, non-commercial property for purposes of the Act and its regulations. We conclude that it does. In enacting the Act the Legislature intended a broad and liberal reading of the statute and regulations to provide strict rules protecting consumers. *Cox v. Sears Roebuck & Co.*, 138 *N.J.* 2, 14–15, 647 *A.*2d 454 (1994). In addition, the work performed by Marascio constituted a service generally sold to the public at large. Those who purchase these services, whether commercial entities or individual citizens, are "consumers" in the ordinary as well as statutory meaning of that word. *N.J.S.A.* 56:8–1(c); *Hundred East Credit Corp. v. Eric Schuster*, 212 *N.J.Super.* 350, 355, 515 *A.*2d 246 (App.Div.), *certif. denied*, 107 *N.J.* 60, 526 *A.*2d 146 *certif. denied*, 107 *N.J.* 61, 526 *A.*2d 146 (1986).

■ In short, a consumer transaction occurs when the transaction involves the sale of consumer goods regardless of who purchases those goods and for what purpose. *See N.J.S.A.* 56:8–1(c) (defining merchandise for purposes of the Act as "any objects, wares, goods, commodities, services or anything offered, directly

or indirectly to the public for sale"). Thus, application of the Act here is consistent with the public policy animating the Act as well as the plain meaning of the statutory and regulatory language.

The fact that Campanella's corporation owned the subject property for investment purposes is not determinative. The Act protects corporate as well as private consumers. *See Coastal Group v. Dryvit Systems,* 274 *N.J.Super.* 171, 179, 643 A.2d 649 (App.Div.1994) ("[T]he protections of the Consumer Fraud Act extend to the purchase of merchandise for use in business operations...."); *Hundred East Credit Corp. v. Eric Schuster, supra,* 212 *N.J.Super.* at 355, 515 A.2d 246 ("Nothing in [the] statutory language suggests that the Act is inapplicable to the sale of merchandise for use in business operations.... And a corporation or other business entity is a 'person' entitled to sue under the Act."). The issue in this case is whether the Act, through the implementing regulations, applies to renovation contracts for unoccupied properties with both commercial and non-commercial uses. *See N.J.A.C.* 13:45A–16.2(12).[2] Given the broad scope of the Act and its liberal construction, so long as the disputed contract involves goods or services generally sold to the public at large, the mere fact that a corporation purchases the goods for use in its business does not preclude invocation of the Act and its regulations. *See Cox v. Sears Roebuck & Co., supra,* 138 *N.J.* at 14–15, 647 A.2d 454; *Perth Amboy Iron Works v. Am. Home,* 226 *N.J.Super.* 200, 208, 543 A.2d 1020 (App.Div.1988), *aff'd,* 118 *N.J.* 249, 571 A.2d 294 (1990); *Hundred East Credit Corp. v. Eric Schuster, supra,* 212 *N.J.Super.* at 355, 515 A.2d 246; *Neveroski v. Blair,* 141 *N.J.Super.* 365, 378, 358 A.2d 473 (App.Div.1976); *BOC Group v. Lummus Crest.,* 251 *N.J.Super.* 271, 278, 597 A.2d 1109 (Law Div.1990).

---

[2] A violation of the Act occurs when a merchant commits an "unlawful practice" as defined by the Act itself, *N.J.S.A.* 56:8–2, or by the regulations enacted pursuant to *N.J.S.A.* 56:8–4. *Cox v. Sears Roebuck & Co., supra,* 138 *N.J.* at 15, 647 A.2d 454.

The regulations under the Act define a residential, non-commercial property as any structure used "in whole or substantial part" as a residence by "any natural person." *N.J.A.C.* 13:45A–16.1. There is no requirement that the owner of the property reside there or that the owner be a natural person and not a business entity. Indeed, the absence of such restrictive provisions enhances the Act's broad purpose—to protect against fraudulent and unconscionable practices in the sale of consumer goods and services. *See Cox v. Sears Roebuck & Co., supra,* 138 *N.J.* at 14–15, 647 *A.*2d 454; *Perth Amboy Iron Works v. Am. Home, supra,* 226 *N.J.Super.* at 208, 543 *A.*2d 1020; *Neveroski v. Blair, supra,* 141 *N.J.Super.* at 378, 358 *A.*2d 473.

Marascio's contention that the Court's inquiry should focus upon the nature of the ownership and the owner's use of the property is unpersuasive. Our case law applies the Act to the sale of " 'merchandise' without regard to its intended use or the nature of the buyer." *Hundred East Credit Corp. v. Eric Schuster, supra,* 212 *N.J.Super.* at 355, 515 *A.*2d 246. Marascio's reliance on *Hambright v. Yglesias, supra,* 200 *N.J.Super.* at 395, 491 *A.*2d 768, for the proposition that an apartment building in which the owner does not reside is a commercial property is misplaced. In *Hambright* the question was whether the disputed property was sufficiently commercial for purposes of imposing tort liability upon the property owner for failure to maintain abutting sidewalks. Potential liability existed for commercial landowners in *Hambright,* but not residential landowners, thus continuing the trend of sidewalk liability cases. *Ibid.* (citing *Mirza v. Filmore Corp.,* 92 *N.J.* 390, 395, 456 *A.*2d 518 (1983); *Stewart v. 104 Wallace St., Inc.* 87 *N.J.* 146, 157, 432 *A.*2d 881 (1981)). Thus, the primary factor we considered for tort liability purposes in *Hambright* was the nature of the ownership, a distinction we deemed irrelevant to the Act's application in *Hundred East Credit Corp. v. Eric Schuster, supra,* 212 *N.J.Super.* at 355, 515 *A.*2d 246. In addition, we do not construe the Law Division's decision in *Blake Construction v. Pavlick, supra,* 236 *N.J.Super.* 73, 564 *A.*2d 130 to mean that the owner of the property must live in the structure for it to qualify as

a residential property. Rather, the court merely considered that fact as one of several factors supporting its decision.

Although it can be argued whether the Act should apply to that portion of an oral agreement for repairs to an office facility in an otherwise residential structure, case law indicates that the Act is to be liberally construed in favor of consumers. *Cox v. Sears Roebuck & Co., supra,* 138 *N.J.* at 14–15, 647 *A.*2d 454. Moreover, as noted, the regulations state that a residential property is one "used in whole or substantial part" as a residence. *N.J.A.C.* 13:45A–16.1. Thus, the regulations, on their face, accommodate contracts for renovations to property with multiple uses.

The property in question consisted of three floors, two residential and one commercial. Two-thirds of the property is residential in nature, thus satisfying the regulatory definition of "residential or non-commercial property." [3] It would be anomalous to exclude a portion of the building from the Act's ambit while including a substantial part of the building. We thus construe the Act to apply to the entire building and the dealings with Marascio. As our cases note, the focus of the Act is on the nature of the goods and services being sold, and not the nature of the buyer or the buyer's intended use of the goods or services. *Hundred East Credit Corp. v. Eric Schuster, supra,* 212 *N.J.Super.* at 355, 515 *A.*2d 246.

In summary, although the traditional or classic consumer transaction is the purchase of retail merchandise or services for private consumption, the Act is broader and applies here. The Act's focus is to compel those who sell consumer goods and services to the public to develop practices that will minimize consumer fraud. Foremost among such practices is the requirement of written agreements.

---

[3] No one was living in the building at the time of the renovation. One interpretation of the regulation, apparently adopted by the trial judge, is that someone must be actually living in the structure for the property to be residential in nature. The regulations, however, do not require the property to be occupied at the time of repair.

## II.

Campanella argues that because S & N was the true owner of the property and he was merely an agent of the corporation, he is not liable personally. Campanella claims he is not a proper party by virtue of his agency status, a status he claims was fully disclosed and known to Marascio as evidenced by Marascio's invoices addressed "Dr. Campanella C/O S/N Realty." The trial judge concluded that Campanella was personally liable because he dealt with Marascio directly. The judge's findings to support his ruling that Campanella was acting only in an individual capacity and thus should be personally liable are insufficient.

Generally, courts will not pierce the corporate veil absent fraud or injustice. *Lyon v. Barrett*, 89 *N.J.* 294, 300, 445 *A.*2d 1153 (1982). Personal liability may be imposed upon a controlling stockholder of a close corporation where the controlling stockholder disregards the corporate form and utilizes the corporation as a vehicle for committing equitable or legal fraud. *Walensky v. Jonathan Royce Intern.*, 264 *N.J.Super.* 276, 283, 624 *A.*2d 613 (App.Div.), *certif. denied*, 134 *N.J.* 480, 634 *A.*2d 527 (1993). Although at one point during the trial the judge suggested that the corporation could be added to the suit (consent or process would be required), at no time did the judge make any findings to support the conclusion that Campanella improperly used the corporation as to justify piercing the corporate veil. The sole reason stated by the trial judge for imposing personal liability was that Campanella personally requested that the work be completed. This is not enough. The record indicates Marascio knew S & N owned the property and hired Latona. In addition, the fact that Campanella may have lent money to S & N to pay its debts does not provide a basis for piercing the corporate veil in this case.

It is hardly clear that Campanella may be held personally liable when the facts elicited were that the property was owned by a corporation, the corporation entered into a written agreement with the general contractor, who then hired Marascio. Indeed, under these circumstances there is a clear inference that Marascio knew

or should have known he was doing work on a corporation's property. Indeed, his April 15, 1992 hand-written bills refer to S & N Realty. Although it appears Campanella paid certain corporate obligations pertaining to the renovation of the Montclair property from his personal checking account, except for some imprecise comments in colloquy, the judge made no specific findings as to how or why that resulted in personal liability for Campanella.

Under the circumstances of this case a remand is necessary here in the interest of justice so that neither party will be prejudiced. On remand Marascio may, if he elects to do so, seek to join S & N as a defendant by obtaining jurisdiction by process or consent. If defendant seeks to impose personal liability on Campanella, the judge should accept additional proofs regarding Campanella's relationship to S & N and make specific findings regarding that relationship as well as his relationship with Marascio. The same conditions apply to Marascio's relationship with Latona.

### III.

Because a retrial is necessary we address briefly Campanella's contention that the trial judge erred by enforcing Marascio's alleged oral contract with him because Marascio failed to establish that the parties agreed to a price term. Campanella contends that the facts as alleged by Marascio do not establish that a price term was agreed upon, thus, Marascio's alleged contract was unenforceable. Even if the evidence supported an oral contract, and that is not clear on this record, the oral contract is unenforceable under the Act and the regulations. *See N.J.A.C.* 13:45A–16.2(a)(12). Thus, Marascio is limited to *quantum meruit,* making irrelevant Campanella's contention that Marascio failed to prove that an oral contract existed.

Nonetheless, a few brief comments are in order regarding certain of the lower court's evidentiary rulings to guide the remand trial. Certain exclusionary rulings made by the judge during this Special Civil Part bench trial unduly constricted the

presentation of defendant's case. Because this was a bench trial such evidence could have been more readily received without unduly lengthening the trial, even if only initially as a proffer. The ruling that the terms of the general contract between S & N Realty and Latona, as well as blueprints, specifications and invoices were irrelevant was incorrect. Evidence Rule 401 requires that the evidence "have a tendency in reason to prove or disprove any fact of consequence to the determination of the action." *N.J.R.E.* 401. Here, Campanella attempted to show that the work Marascio claimed he performed as extras was included within the specifications of the general contract, under which Marascio admitted he received $24,000.

The evidence of what work was to be done under the contract between S & N and Latona, and the subcontract between Latona and Marascio, was relevant and potentially highly probative. It would be admissible as a business record to show the scope of work Marascio was hired to perform, or to contradict Marascio's claims. In addition, the trial judge erroneously excluded invoices documenting payment by S & N to other contractors for completion of work Marascio claims he performed.[4] Campanella could testify as to such work and payments therefor from personal knowledge and support it by business records of S & N or his own business records. As observed, the judge did not make adequate findings regarding the proffer of those invoices and the record is unrevealing. At the remand trial the issue of whether some of the work Marascio has already been compensated for was included within his alleged contract with Campanella for extra work must be resolved, as well as whether Marascio or someone else did the work he claims.

## IV.

Campanella claims that Marascio cannot prove *quantum meruit*, which is the remedy available due to the application of the Act,

---

[4] Authentication did not seem to be an issue, but if it is, that can be addressed at trial.

because (1) he did not argue it at trial, (2) the evidence does not show that Campanella possessed an objective expectation that he would pay Marascio, and (3) Marascio has not presented sufficient evidence of the alleged work's value. Campanella asserts that the invoices presented by Marascio are insufficient standing by themselves to establish the reasonable value of the services Marascio claims he rendered.

Because a remand is required *quantum meruit* may be asserted by Marascio to determine what services were actually provided and the reasonable value of those services. *See generally Weichert Co. Realtors v. Ryan,* 128 *N.J.* 427, 438, 608 *A.*2d 280 (1992). Adequate proofs were not adduced at trial regarding the nature and value of the services rendered and materials furnished by Marascio which were not included in his contract with Latona as the issue was never addressed at trial. *Hackensack Hospital v. Tiajoloff,* 85 *N.J.Super.* 417, 419, 204 *A.*2d 902 (App.Div.1964), *certif. denied,* 44 *N.J.* 396, 209 *A.*2d 137 (1965) (plaintiff may prove the reasonable value of the services rendered by its "books of account" only where the defendant has not challenged their value). Hence, this issue can be explored on retrial.

Reversed and remanded for a new trial.