21 A.3d 637 (2011)
420 N.J. Super. 331
Mark W. MURNANE, Plaintiff-Appellant/Cross-Respondent,
v.
FINCH LANDSCAPING, LLC, Defendant-Respondent/Cross-Appellant.
Docket No. A-5156-09T1
Superior Court of New Jersey, Appellate Division.
Argued May 10, 2011.
Decided July 1, 2011.
*638 Justin A. Meyers argued the cause for appellant/cross-respondent (Law Offices of G. Martin Meyers, attorneys; Mr. Meyers, on the briefs).
Ernest Hemschot III, Newton, argued the cause for respondent/cross-appellant.
Before Judges PARRILLO, YANNOTTI and SKILLMAN.
The opinion of the court was delivered by
*639 SKILLMAN, J.A.D. (retired and temporarily assigned on recall).
The issue presented by this appeal is whether a homeowner who contracts directly with a building contractor to perform a home improvement, without engaging the services of a general contractor, may assert a claim against that contractor under the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -20, and the Contractor's Registration Act, N.J.S.A. 56:8-136 to -152. We conclude that such a contract is a home improvement contract subject to the CFA, the Contractor's Registration Act and the Home Improvement Practices regulations adopted by the Division of Consumer Affairs to implement these statutory provisions. N.J.A.C. 13:45A-16.1 to -16.2. Therefore, we reverse the order of the trial court dismissing plaintiff's CFA claim and remand for a new trial.
Plaintiff contracted with defendant to lay a bluestone patio in the backyard of his home. Plaintiff also contracted with a patio designer to draft a plan for the patio and with other building contractors to perform other components of the project, specifically masons to do preparation work, build retaining walls, and apply stone veneer. Plaintiff referred to himself at one point as the "general contractor" for construction of his patio.
Defendant entered into a written contract with plaintiff to lay the bluestone for $26,300. The contract set forth the thickness of the bluestone and other specifications.
During construction of the patio, there were various changes made, including an increase in the size of the patio and installation in some locations of thinner bluestone than provided in the contract. None of these changes were reflected by change orders or other writings.
Plaintiff paid defendant the full contract price of $26,300. However, defendant subsequently sent plaintiff invoices for additional amounts, which according to defendant represented additional costs it incurred as a result of changes in the scope of the project, including the increase in the size of the patio. Plaintiff refused to pay those additional amounts. Plaintiff also claimed that the work defendant performed failed to conform in various respects to the parties' contract.
Plaintiff initially brought this action pro se in the Special Civil Part. His complaint asserted claims for both breach of contract and a violation of the CFA. Defendant filed a counterclaim for $5,940.43 for the additional work it allegedly performed for plaintiff.
After plaintiff retained counsel to represent him, he moved to transfer the action to the Law Division on the ground that the trebling of his damages under the CFA would be likely to result in a judgment in excess of the $15,000 jurisdictional limit of the Special Civil Part. Defendant responded by filing a cross-motion for a declaration that the CFA was inapplicable to this case and dismissal of plaintiff's CFA claim.
The trial court concluded in a written opinion that because plaintiff had characterized himself as "the general contractor of his patio project," he could not assert a CFA claim against defendant. Consequently, the court denied plaintiff's motion to transfer the action to the Law Division and granted defendant's motion to dismiss plaintiff's CFA claim.
The case was subsequently tried before the Special Civil Part on plaintiff's breach of contract claim and defendant's counterclaim. A jury returned a verdict of no cause of action on plaintiff's contract claim, but found defendant had negligently damaged plaintiff's property in performing the work and returned a verdict in plaintiff's *640 favor for that damage in the aggregate amount of $655. The jury ruled in defendant's favor on its counterclaim and awarded defendant $4070 for additional work.
Defendant then moved for an award of counsel fees against plaintiff under the Frivolous Litigation Statute, N.J.S.A. 2A:15-59.1, which the trial court denied.
Plaintiff appeals from the dismissal of its CFA claim and seeks a new trial on both its CFA and breach of contract claims and on defendant's counterclaim. Defendant cross-appeals from the denial of its motion for counsel fees.

I.
"The Legislature enacted the CFA in 1960 to address rampant consumer complaints about fraudulent practices in the marketplace and to deter such conduct by merchants." Thiedemann v. Mercedes-Benz USA, LLC, 183 N.J. 234, 245, 872 A.2d 783 (2005). "The history of the [CFA] is one of constant expansion of consumer protection." Gennari v. Weichert Co. Realtors, 148 N.J. 582, 604, 691 A.2d 350 (1997). "[L]ike most remedial legislation, the [CFA] should be construed liberally in favor of consumers." Cox v. Sears Roebuck & Co., 138 N.J. 2, 15, 647 A.2d 454 (1994).
In 1980, the Division of Consumer Affairs, which has been assigned primary responsibility for implementation and enforcement of the CFA, see N.J.S.A. 52:17B-124; N.J.S.A. 56:8-3 to -4, recognized that home improvement contracting is a business that is particularly susceptible to consumer fraud violations, by adopting Home Improvement Practices regulations to deal specifically with these types of contracts. N.J.A.C. 13:45A-16.1 to -16.2; 12 N.J.R. 209(b) (Mar. 11, 1980). In Cox, supra, 138 N.J. at 19-20, 647 A.2d 454, the Supreme Court broadly construed and applied these regulations.
In 2004, the Legislature also recognized that home improvement contracting is particularly susceptible to consumer fraud violations, by enacting the Contractor's Registration Act as a supplement to the CFA. L. 2004, c. 16. The Act requires every home improvement contractor to register with the Division of Consumer Affairs, N.J.S.A. 56:8-138, and confers authority upon the Director of the Division of Consumer Affairs to adopt implementing rules and regulations, N.J.S.A. 56:8-152. Any violation of the Act is an "unlawful act" under the CFA. As the Supreme Court observed in Czar, Inc. v. Heath, 198 N.J. 195, 202, 966 A.2d 1008 (2009), "the seriousness with which the Legislature approached the perceived problems in [the home improvement] industry is reflected both in the expansive language of the statute's definitional reach and in the remedies that the statute authorizes."
The primary issue presented by this appeal is whether the home improvement contract entered into between plaintiff and defendant was subject to the CFA, the Contractor's Registration Act, and the regulations adopted by the Division of Consumer Affairs to implement these statutory provisions.
The Contractor's Registration Act specifically defines a "[h]ome improvement contract" as "an oral or written agreement for the performance of a home improvement between a contractor and an owner, tenant or lessee, of a residential or noncommercial property, and includes all agreements under which the contractor is to perform labor or render services for home improvements, or furnish materials in connection therewith." N.J.S.A. 56:8-137. The contract between plaintiff and defendant clearly falls within this expansive definition of "[h]ome improvement *641 contract." Defendant is a "[c]ontractor," which the Act defines as "a person [or business entity] engaged in the business of making or selling home improvements," because defendant advertises and sells home improvement services to the public and is in fact a registered home improvement contractor, and plaintiff is "an owner. . . of a residential . . . property." Ibid. Moreover, the Home Improvement Practices regulations contain a definition of "home improvement" that includes "the. . . installation . . . of . . . patios. . . ." N.J.A.C. 13:45A-16.1A.
There is no basis in these definitions for excluding a homeowner who contracts with multiple contractors from the protections of the CFA and the Contractor's Registration Act. Even if such a homeowner could be characterized as a general contractor, he is still "an owner. . . of a residential . . . property" who has entered into a "home improvement contract" with a "contractor." N.J.S.A. 56:8-137.
In arguing that a homeowner who contracts with multiple home improvement contractors to perform related improvements to his home is a general contractor who is not entitled to the protections of the CFA and the Contractor's Registration Act, defendant relies primarily upon Messeka Sheet Metal Co. v. Hodder, 368 N.J.Super. 116, 845 A.2d 646 (App.Div. 2004). In that case, a homeowner contracted with a general contractor to rehabilitate his home. Id. at 117-18, 845 A.2d 646. That general contractor contracted with an HVAC subcontractor to install air conditioning. Ibid. The subcontractor subsequently asserted a direct claim against the homeowner for the balance of the purchase price of the air conditioning system. Id. at 118, 845 A.2d 646. The homeowner responded by asserting a CFA claim against the subcontractor. Ibid.
In upholding the dismissal of this claim on the ground that a homeowner may not pursue a CFA claim against a subcontractor with which it had no direct contractual dealings, we stated:
This is not the typical "home improvement" situation, where the owner deals with the contractor directly. To apply all of the regulatory requirements [of the CFA] to each individual subcontractor in this type of situation would be inefficient and duplicative.
. . . .
. . . [The homeowner] sought out a general contractor and architect. He did not have a direct contract with the HVAC subcontractor. . . . By proceeding in this fashion, [the homeowner] left it to the general contractor to make the choices as to who would perform this portion of the project. It would not likely occur to a subcontractor that it had any direct obligation to [the homeowner], since its engagement was with [the general contractor]. If anyone would be responsible as a home improvement contractor under the CFA to the owner, we presume his own general contractor would be.
[Id. at 125, 129, 845 A.2d 646.]
Thus, the court in Messeka held that the homeowner was precluded from maintaining a CFA claim against the HVAC subcontractor because he had no direct contractual relationship with that contractor, not simply because that contract was characterized as a "subcontract." In contrast, plaintiff had a direct contractual relationship with defendant. Therefore, even if plaintiff could be viewed as a general contractor with respect to the improvements to his home, he was entitled to the protections of the CFA in his dealings with the contractors who performed those improvements. See Czar, Inc. v. Heath, *642 398 N.J.Super. 133, 141, 939 A.2d 837 (App.Div.2008) (distinguishing Messeka on the ground that the homeowner in that case "was not in privity" with the HVAC subcontractor whereas the homeowner in Czar "directly contracted" with the home improvement contractor and therefore could maintain a CFA claim against that contractor), aff'd, 198 N.J. 195, 966 A.2d 1008 (2009). We add that if there could have been doubt about this conclusion before enactment of the Contractor's Registration Act, which became effective on December 31, 2005, L. 2004, c. 155, § 5, the previously quoted definitional sections of that supplement to the CFA would have eliminated that doubt.
Plaintiff's complaint clearly states claims under the CFA, as amended by the Contractor's Registration Act, and the Home Improvement Practices regulations. The Contractor's Registration Act provides:
On or after December 31, 2005, every home improvement contract for a purchase price in excess of $500, and all changes in the terms and conditions of the contract, shall be in writing. The contract shall be signed by all parties thereto, and shall clearly and accurately set forth in legible form and in understandable language all terms and conditions of the contract. . . .
[N.J.S.A. 56:8-151(a).]
This section of the Act mirrors a previously adopted section of the Home Improvement Practices regulations. N.J.A.C. 13:45A-16.2(a)(12). The complaint alleges, among other things:
The law requires changes to a contract to have a properly executed signed change order. This should include the scope of work, start and completion dates, the cost for the work to be performed and signatures of both parties. No change order exists or was it ever discussed.
Plaintiff's allegations, if proven at trial, could establish violations of N.J.S.A. 56:8-151(a) and N.J.A.C. 13:45A-16.2(a)(12). Therefore, the trial court erred in dismissing plaintiff's CFA claim.

II.
Defendant argues that even if the trial court erred in dismissing plaintiff's CFA claim, the judgment in its favor should nevertheless be affirmed because the jury verdict on the breach of contract claims precludes a finding in plaintiff's favor on its CFA claim. However, the testimony of defendant's principal, Harold Finch, concerning plaintiff's alleged oral agreement to change orders regarding the home improvement project, which would appear to have violated N.J.S.A. 56:8-151(a) and N.J.A.C. 13:45A-16.2(a)(12), was an essential element of defendant's proofs at the trial of the breach of contract action. It is arguable that N.J.S.A. 56:8-151(a) and N.J.A.C. 13:45A-16.2(a)(12) would require exclusion of testimony about those alleged oral change orders, see Marascio v. Campanella, 298 N.J.Super. 491, 503, 689 A.2d 852 (App.Div.1997); Blake Constr. v. Pavlick, 236 N.J.Super. 73, 80-81, 564 A.2d 130 (Law Div.1989), but because this issue has not been briefed, we do not pass upon it. At a minimum, however, even if evidence of such change orders were admissible, plaintiff would be entitled to present evidence of the statute and regulations that prohibit oral change orders. If such evidence had been admitted at the trial of the breach of contract claims, the outcome very well could have been different. Therefore, the verdict at that trial does not preclude plaintiff from pursuing his CFA claims. Indeed, because the admission of such evidence could have changed the jury's verdict regarding the breach of contract claims, the judgment *643 on those claims must also be reversed and the case remanded for a retrial of both the CFA and contract claims. Only the $655 verdict in plaintiff's favor on its negligence claim may stand.
In light of our determination that plaintiff has presented a meritorious CFA claim, we summarily reject defendant's argument on its cross-appeal from the denial of its motion for counsel fees under the Frivolous Litigation Statute. R. 2:11-3(e)(1)(E).
On plaintiff's appeal, we reverse and remand to the Law Division for a retrial on all claims except plaintiff's negligence claim. On defendant's cross-appeal, we affirm.