**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2498-22

HARRY VANWAGENEN and
ANN B. VANWAGENEN,

     Plaintiffs-Appellants,

v.

FORTRESS FENCE, LLC,
CITADEL CUSTOM, MICHAEL
CARHART, MICHAEL
HAVEKOST, and DIANE L.
CARHART,

     Defendants-Respondents,

and

DARK CITY HARDWOOD
FLOORING and DANIEL B.
CASTRO,

     Defendants.

_____

Submitted March 20, 2024 – Decided April 17, 2024

Before Judges Vernoia and Gummer.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-0127-20.

Lueddeke Law Firm, attorneys for appellants (Ronald L. Lueddeke, on the brief).

Respondents have not filed briefs.

PER CURIAM

Plaintiffs Harry Vanwagenen and Ann B. Vanwagenen appeal from a February 28, 2023 order granting a default judgment against defendants Fortress Fence, LLC (Fortress), Citadel Custom (Citadel), Michael Carhart, and Michael Havekost and a March 31, 2023 order denying their motion for reconsideration of the judgment. Plaintiffs argue the court erred by denying their request to also enter the February 28, 2023 order for default judgment against defendant Diane L. Carhart. Unpersuaded by plaintiffs' arguments concerning entry of the default judgment, and because plaintiffs have abandoned any claim the court erred by denying their reconsideration motion, we affirm.

Plaintiffs filed a complaint against the aforementioned defendants, as well as additional defendants Dark City Hardwood Flooring (Dark City) and Daniel B. Castro. The complaint alleged Fortress, Citadel, and Dark City are "home improvement contractors." Plaintiffs also alleged defendants Michael Carhart, Michael Havekost, and Diane L. Carhart "were agents, servants, members and/or

2

owners" of Fortress and Citadel, and Dark City is a trade name for defendant Daniel B. Castro.

Plaintiffs also alleged that Fortress had provided a "Scope of Work," which "memorialize[d] home improvement work to be performed by" Fortress at plaintiffs' home. Plaintiffs further averred they had paid Michael Carhart $3,900 for the refinishing of hardwood floors and the work had been performed by Dark City and Daniel B. Castro but not "in a workmanlike manner."[1] Plaintiffs also claimed the other work performed by defendants at plaintiffs' home "was not performed in either a timely manner or workmanlike manner."

In the complaint plaintiffs alleged defendants were not properly registered to perform home improvement work as required under the Contractors' Registration Act (CRA), N.J.S.A. 56:8-136 to -152,[2] and defendants otherwise

---

[1] The paragraph in the complaint containing the assertion plaintiffs paid Michael Carhart $3,900 for the refinishing of the floors cites to an annexed Exhibit E. The exhibit includes what appears to be two checks dated January 16, 2019, each in the amount of $3,900, with one check payable to Michael Carhart and the other to Citadel.

[2] Effective January 8, 2024, the title of the CRA was amended in part to change its title to the Contractors' Business Registration Act, L. 2023, c. 237, § 25, and was otherwise amended, see L. 2023, c. 237, §§ 26 to 39. In our analysis of plaintiffs' claims on appeal, we consider and apply the CRA prior to its 2024 amendments because it was the statute in effect when plaintiffs' claims against the various defendants arose and it is the statute the trial court applied in its consideration of plaintiffs' claims.

violated various Home Improvement Practices (HIP) regulations, N.J.A.C. 13:45A-16.1 to -16.2, that had been promulgated by the New Jersey Division of Consumer Affairs (the Division) under the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -228, to address issues related to home improvement contracts. Murnane v. Finch Landscaping, LLC, 420 N.J. Super. 331, 336-37 (App. Div. 2011). The Legislature adopted the CRA in 2004 as a supplement to the CFA. Ibid. "Any violation of the [CRA] is an 'unlawful act' under the CFA." Id. at 337; see also N.J.S.A. 56:8-146(a) (providing it is an unlawful practice under the CFA to violate any provision of the CRA).

Plaintiffs alleged defendants had violated the CRA by failing to: include a CRA registration number on their invoices, the toll-free telephone number for the Division on their "invoices/contracts," a written statement of plaintiffs' right of rescission of the contract for the "Scope of Work"; and provide plaintiffs with a certificate of commercial general liability insurance; include the telephone number of defendants' commercial general liability insurance carrier, and provide plaintiffs with a written contract for the work to be performed.[3]

---

[3] Although plaintiffs did not cite in the complaint to the applicable provisions of the CRA they claimed defendants had violated, we note each of the alleged actions, and failures to act, if true, violated the statute. More particularly, defendants' alleged failures to include or provide: a CRA registration number

4                                                                      A-2498-22

Plaintiffs also alleged defendants violated the HIP regulations by failing to provide: a writing setting forth the dates on which, or time within which, the work would be completed; a written contract for the work; and written and signed charge orders.[4] The complaint further alleged defendants had violated the regulations by commencing their work "before permits were issued" and by failing to obtain permits.

The complaint asserted a cause of action under the CFA that included allegations the individual defendants "are personally liable under the CFA for such conduct." The complaint further asserted additional causes of action for legal and equitable fraud, breach of contract, negligence, and unjust enrichment.

---

on their invoices violated N.J.S.A. 56:8-151(a)(1); a written statement of plaintiffs' right of rescission of the contract for the Scope of Work violated N.J.S.A. 56:8-151(b); a certificate of commercial general liability insurance violated N.J.S.A. 56:8-151(a)(2); the telephone number of Fortress's commercial general liability insurance provider violated N.J.S.A. 56:8-151(a)(2); and a written contract for the work to be performed violated N.J.S.A. 56:8-151(a).

[4] Again, the complaint did contain citations to specific regulations plaintiffs claimed defendants violated, but the following allegations in the complaint, if true, constituted violations of the HIP regulations. More specifically, Fortress's alleged failures to provide plaintiffs with a written statement of the dates, or time within which, the work would be completed, a written contract for the work, written and signed change orders, and Fortress's failure to obtain permits before performing its work, if true, violated N.J.A.C. 13:45A-16.2(a)(10) and (12).

A-2498-22

Pertinent here, defendants Fortress, Citadel, Michael Carhart, Michael Havekost, and Diane L. Carhart filed a single answer generally denying plaintiffs' allegations and asserting affirmative defenses. The court later granted those defendants' counsel's motion to be relieved as counsel and ordered that defendants obtain new counsel within forty-five days. The court subsequently granted plaintiffs' motion to enter default against those defendants because they had failed to obtain new counsel in accordance with the court's prior order. The court further granted plaintiffs leave to apply for judgment by default against those defendants pursuant to Rule 4:43-2(b).

At the proof hearing held on plaintiffs' request for a default judgment, plaintiffs advised the court they did not seek a judgment against Dark City or Daniel B. Castro and instead sought a judgment only against Fortress, Citadel, Michael Carhart, Michael Havekost, and Diane L. Carhart.

In support of their request for a default judgment, plaintiffs relied on the allegations in the complaint and the testimony of plaintiff Ann B. Vanwagenen, who explained she understood defendants Michael Carhart and Michael Havekost were the same person but that she "only knew him as Michael

6

Carhart."[5]  She further testified that plaintiffs had paid Michael Carhart $6,000 in cash for the home improvements and, at his request, had paid $3,900 by check to Citadel for materials.

Ann B. Vanwagenen also explained plaintiffs had entered into a contract with "one entity"—Fortress—"to do the work," which involved remodeling the kitchen and a bathroom and refinishing the hardwood floors in plaintiffs' home. She further testified to the numerous defects in the workmanship, plaintiffs' termination of the agreement in the middle of the project "because it was a nightmare," the need to hire other contractors to undo, redo, and repair the work that had been done under the agreement with Fortress, and the costs associated with the additional work required.  Ann B. Vanwagenen also explained she had met the "contractor" through a referral from a realtor because "he"—Michael Carhart—"had done work for the realtor," but she "[n]ever once was told that [Michael Carhart] was not licensed."

Based on the testimony presented, the court found plaintiffs did not "get anything they bargained for" and "[e]verything [plaintiffs] paid for with the

---

[5]  Plaintiffs' counsel also provided the court with an exhibit—a judgment of conviction for Michael Havekost—that was not admitted in evidence but which counsel accurately represented states that Michael Havekost is "[a]lso known as Michael Carhart."

A-2498-22

exception of the bathroom floor . . . had to" be redone. The court determined "[d]efendants intentionally defrauded" plaintiffs by failing to provide notices and otherwise comply with the CRA and thereby had violated the CFA.

The court, however, questioned plaintiffs concerning their request for entry of a judgment against Diane L. Carhart because the claim against her was based solely on the fact that her name appeared as one of the owners of Fortress on a "License Information" report (Division report) they had received from the Division and had annexed to the complaint. Plaintiffs' counsel asserted Diane L. Carhart was liable for the violations of the CFA found by the court because "[i]f it wasn't for her setting up th[e] business and being the owner—and [if] she had the necessary registration, this would—none of this would ever have occurred." The court rejected the argument, finding that plaintiffs required "more than just the fact that [she] registered a corporation in order to defraud the customer." The court determined there was insufficient evidence supporting entry of default judgment against Diane L. Carhart.

The court otherwise determined plaintiffs had sustained $25,914.71 in damages, trebled that amount in accordance with the CFA, and entered a February 28, 2023 default judgment in the amount of $77,744.13 against Fortress, Citadel, Michael Carhart, and Michael Havekost.

Plaintiffs subsequently moved for reconsideration of the judgment, arguing the court had erred by failing to enter the judgment against Diane L. Carhart and by dismissing the complaint against her. The court denied the reconsideration motion, finding plaintiffs had failed to establish Diane L. Carhart had any contacts with plaintiffs or involvement in plaintiffs' entry into their agreement with Fortress. The court entered an order denying plaintiffs' reconsideration motion and this appeal followed.

Where a defendant has defaulted, a court is required to conduct a proof hearing at which a plaintiff must establish his or her claims. R. 4:43-2(b); see also Chakravarti v. Pegasus Consulting Grp., Inc., 393 N.J. Super. 203, 210 (App. Div. 2007) (explaining "judgment should not ordinarily be entered without a proof hearing"). At a proof hearing, a trial court must "view a plaintiff's proofs 'indulgently,'" Heimbach v. Mueller, 229 N.J. Super. 17, 20 (App. Div. 1988) (citation omitted), but a "plaintiff may be . . . precluded from recovery where the proof" offered in support of the plaintiff's "case reveals a legal defense to [a] claim," Johnson v. Johnson, 92 N.J. Super. 457, 465 (App. Div. 1966).

Plaintiffs did not produce any evidence at the proof hearing establishing Diane L. Carhart had been involved in Fortress's agreement to perform home

improvement services or in the performance of what plaintiffs asserted were Fortress's deficient and destructive services. The record is bereft of evidence Diane L. Carhart offered the services, negotiated the agreement to perform the services, participated in the performance of the services, or had any knowledge Michael Carhart, on behalf of Fortress, had agreed to provide the services. And, the absence of any evidence she had been involved in the transaction with plaintiffs was the basis of the court's determination plaintiffs had not asserted or proven facts supporting a finding Diane L. Carhart violated the CFA, such that it was appropriate to enter a default judgment against her.

Plaintiffs argue the court erred because the Division report showed Diane L. Carhart was one of the registered owners of Fortress when it was issued a home-improvement contractor's license in December 2011. The Division report also showed Fortress's license had expired in December 2013: six years before plaintiffs, and Michael Carhart on Fortress's behalf, had entered into the 2019 home improvement services agreement with plaintiffs.

The limited information in the Division report does not undermine the court's determination plaintiffs had failed to establish Diane L. Carhart's liability for the claims alleged in their complaint. Again, neither the allegations in the complaint nor the evidence presented at the proof hearing established Diane L.

10

Carhart had been involved with Fortress following the expiration of its license as a home-improvement contractor in 2013 or when Michael Carhart entered into the 2019 agreement on Fortress's behalf with plaintiffs. In fact, there is no evidence or claim that Diane L. Carhart—even assuming she was still an owner of Fortress in 2019—had knowledge Michael Carhart had entered into the 2019 agreement with plaintiffs on Fortress's behalf or performed services for plaintiffs.

Plaintiffs contend they were entitled to a default judgment under the CFA against Diane L. Carhart solely because the Division report shows she was listed as one of Fortress's owners from 2011 to 2013 when Fortress was registered as a home-improvement contractor. More particularly, plaintiffs argue they proved Diane L. Carhart's liability under the CFA because, as one of Fortress's owners, she was liable as a matter of law for Fortress's various violations of the CRA and the HIP regulations that also constituted violations of the CFA. We are not persuaded.

Plaintiffs' arguments are founded on the contention that as an owner of Fortress, Diane L. Carhart had the legal responsibility to ensure that Fortress complied in all respects with the requirements of the CRA and the HIP regulations. They contend she should not have allowed anyone associated with

Fortress to engage in practices violative of the statute or regulations and the court should have inferred she was aware of Michael Carhart's agreement on Fortress's behalf to perform home improvement services at plaintiffs' home and the claimed violations of the CRA and the HIP regulations attendant to the agreement.

Plaintiffs also claim Diane L. Carhart is liable under the CRA as a "contractor" because that term includes "a person engaged in the business of making or selling home improvements and includes a corporation, partnership, association and any other form of business organization or entity, and its officers, representatives, agents and employees." N.J.S.A. 56:8-137. Plaintiffs argue Diane L. Carhart is liable under the statute because she was an officer, representative, or agent of Fortress when Michael Carhart entered into the 2019 agreement with plaintiffs on Fortress's behalf and Fortress performed home improvement services for plaintiffs.

Similarly, plaintiffs contend Diane L. Carhart is liable for the violations of the HIP regulations because she falls within the regulations' definition of a "seller" of home-improvement services. See N.J.A.C. 13:45A-16.1A. The HIP regulations define "seller" as a "person engaged in the business of making and selling home improvements and includes corporations, partnerships,

associations and any other form of business organization or entity, and their officers, representatives, agents and employees." N.J.A.C. 13:45A-16.1A. Plaintiffs argue Diane L. Carhart was a seller under the HIP regulations in her capacity as an owner of Fortress and, for that reason alone, is liable for Michael Carhart's actions on behalf of Fortress when it entered into the agreement with plaintiffs.

Plaintiffs further argue Diane L. Carhart is liable under the CFA for Michael Carhart's actions on behalf of Fortress in 2019 because the statute provides that a "person" under the statute includes "any natural person or . . . corporation . . . and any . . . officer . . . [or] stockholder . . . thereof[.]" N.J.S.A. 56:8-1(d).

In our view, plaintiffs misread the various statutes and regulations to suggest that an owner of a limited liability company has strict liability for every violation of the CRA, the HIP regulations, and the CFA. Plaintiffs' interpretation of the statutes and regulations finds no support in the law. In Allen v. V & A Brothers, Inc., our Supreme Court considered the liability of employees and officers of a corporation for "CFA violations that are directly attributable to acts undertaken by them through the corporate entity." 208 N.J. 114, 117 (2011). The alleged violations of the CFA in Allen arose in part from

claims the corporation, its officers and employees had violated the CRA and the HIP regulations. Id. at 121-22.

The Court recognized the CFA defines a "person" in N.J.S.A. 56:8-1(d) in contemplation of "broadly [imposing] . . . individual liability" and explained "[t]he very breadth of the definition itself lends strong support to the proposition that, at least in theory, the CFA permits the imposition of individual liability upon one whose acts are part of a violation by a corporation." Id. at 130.

The Court further explained that an analysis of individual liability under the CFA "cannot end there, because the definitional section does not itself create the basis for liability." Ibid. Rather, the definition of "person" under the CFA, on which plaintiffs rely here, "merely identifies the universe of actors who may engage in the behavior that the statute defines to be the violation; it does not independently create a basis for their liability." Ibid. Thus, the Court in Allen rejected the precise and singular basis on which plaintiffs' claim against Diane L. Carhart rests. That is, plaintiffs argue the court should have entered a judgment against Diane L. Carhart merely because she might constitute a "person" under the CFA and, by logical extension, a "contractor" under the CRA or a "seller" under the HIP regulations. See id. at 134.

Allen explained that a plaintiff may establish the liability of an individual who falls within the definition of a "person" under the CFA by proving the individual committed "an affirmative act," including "affirmative acts of misrepresentation," or "a knowing omission," that violates the statute. Id. at 131. Here, the court correctly concluded plaintiffs had failed to establish Diane L. Carhart's liability on that basis. Ibid. The record is devoid of evidence she took any affirmative action or made a knowing omission concerning Fortress's alleged violations of the CRA or the HIP regulations. And an individual is "not liable merely because of the act of the corporate entity." Id. at 132.

In Allen, the Court also explained that an individual who qualifies as a "person" under the CFA may be liable for violations of "regulations promulgated pursuant to the" CFA, such as the HIP regulations plaintiffs claim Fortress violated here. Id. at 133-36. A determination of individual liability of a corporate officer or employee on that basis requires a "fact-sensitive determination[]," id. at 135, that "necessarily depend[s] upon an evaluation of both the specific source of the claimed violation that forms the basis for the plaintiff's complaint as well as the particular acts that the individual has undertaken," id. at 136. A determination of individual liability cannot be made in the absence of evidence establishing whether the defendant "engaged in acts

A-2498-22

that suffice for this purpose." Ibid.; see, e.g., Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610 (1997) (finding an officer and shareholder of a corporation individually liable under the CFA because she was integral to the marketing and sales of the property about which the alleged misrepresentations supporting the CFA claims were made). For example, principals of a corporation may be individually liable where they "set the policies" that violate the CFA or engage in a "course of conduct" resulting in a corporation's violation of the CFA. Allen, 208 N.J. at 134.

Here, as noted, plaintiffs did not present any evidence establishing that Diane L. Carhart had been involved in the agreement to provide home improvement services to plaintiffs, set any putative Fortress policies that resulted in the alleged violations of the CRA, the CFA, or the HIP regulations, or engaged in a course of conduct, or any conduct at all, resulting in Fortress's alleged violations of the statutes or regulations. The only evidence cited by plaintiffs in support of their claim against Diane L. Carhart—the Division report—establishes nothing more than that from 2011 to 2013, she was listed as an owner of Fortress. Plaintiffs did not present evidence Diane L. Carhart owned or had any involvement in Fortress or its business in 2019 when the alleged violations of the CRA, CFA, and the HIP regulations occurred. Thus, plaintiffs'

A-2498-22

claim the trial court should have reasonably inferred that Diane L. Carhart was involved in the actions plaintiffs complained were taken on Fortress's behalf by Michael Carhart, or Fortress's purported policies in 2019, finds no support in any evidence presented at the proof hearing.

In sum, we are convinced the trial court correctly determined plaintiffs had failed to present evidence sufficient to establish individual liability for Diane L. Carhart for actions taken by or on behalf of Fortress. And, for that reason, we affirm the court's February 28, 2023 order for judgment.

Because we conclude the court did not err by entering the February 28, 2023 order, we reject any putative claim the court erred by denying plaintiffs' reconsideration motion. Additionally, we observe that plaintiffs do not offer any argument on appeal challenging the March 31, 2023 order denying their reconsideration motion, and they do not include in the record on appeal any of the documents submitted in support of the motion. We therefore deem abandoned any claim the court erred by denying the reconsideration motion, see Drinker Biddle & Reath LLP v. N.J. Dep't of L. & Pub. Safety, 421 N.J. Super. 489, 496 n.5 (App. Div. 2011) (explaining an issue not briefed on appeal is deemed abandoned), and we otherwise do not consider the merits of the court's disposition of the reconsideration motion because plaintiffs did not include the

parts of the record essential to a proper consideration of the motion as required under Rule 2:6-1(a)(1)(A) and (I), see Cmty. Hosp. Grp., Inc. v. Blume Goldfaden Berkowitz Donnelly Fried & Forte, P.C., 381 N.J. Super. 119, 127 (App. Div. 2005) (explaining a reviewing court is not "obliged to attempt review of an issue when the relevant portions of the record are not included" on appeal).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2498-22