**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2554-23

AGIM MUCAJ and DIANA MUCAJ,

     Plaintiffs-Appellants,

v.

GREGORY J. COUGHLIN,
NATASA SPASEVSKA a/k/a
NATASA COUGHLIN, NIKOS
BROTHERS CONSTRUCTION
LLC, NIKOLAS NIKOS,
BOARDWALK BUILDERS,
BOARDWALK DESIGN &
DEVELOPMENT INC., and
ANTHONY CAPPUCCIO,

     Defendants-Respondents,

and

KEY INSPECTION SERVICE LLC,
and STEVEN STAFFORD,

     Defendants.

_____

Submitted March 5, 2025 – Decided June 12, 2025

Before Judges Sabatino and Jacobs.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Docket No. L-1246-22.

KingBarnes, attorneys for appellants (Marisa J. Hermanovich, on the brief).

Respondents have not filed a brief.

PER CURIAM

Plaintiffs Agim and Diana Mucaj appeal the Law Division order of March 22, 2024 granting summary judgment in favor of defendants, Boardwalk Design and Development, Inc. (BDD) and its owner, Anthony Cappuccio, dismissing plaintiffs' claims for breach of contract, breach of warranty, negligence, and violations of the New Jersey Consumer Fraud Act (CFA), N.J.S.A. 13:45A-17A and N.J.S.A. 56:8-138.2.

In this appeal, we consider whether a subsequent homeowner may sustain a breach of contract claim based on an express warranty of good workmanship made by the original contractor to the original homeowner, but in the absence of privity between the original contractor and subsequent homeowner, and the absence of a non-assignability clause between the original contractor and the original homeowner. Because we determine bedrock principles of contract law control, we hold plaintiffs may maintain a claim for breach of a contractual express warranty in such circumstances. We further determine that the

remaining counts of the complaint were properly dismissed by the trial court on summary judgment. Accordingly, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

I.

In 2021, plaintiffs purchased a home in Ventnor City from defendants Gregory Coughlin and Natasa Spasevska, only later to discover structural defects. Before purchase, the home had undergone major renovations due to damage caused by Superstorm Sandy in 2012. Coughlin had contracted with BDD in October 2014 to serve as the general contractor for a house-lifting and renovation project. BDD was headed by Cappuccio, who supervised the project and coordinated with Nikos Brothers Construction LLC, the subcontractor responsible for constructing the foundation walls, repairing damaged structural elements, lifting the house to meet FEMA flood standards, and completing exterior renovations.

In November 2014, the City of Ventnor issued construction permits to BDD for the project, relying on a home elevation contractor certification by Cappuccio. By August 2015, the work was completed, and the City issued a certificate of occupancy.

Following their purchase, plaintiffs discovered structural problems with

the home. Plaintiffs retained a structural engineer, who found the foundation dangerously unstable and estimated $77,550 to make repairs.

In April 2022, plaintiffs filed a complaint naming multiple defendants, including the previous homeowners, the contractors and their principals, the subcontractors and their principals, a home inspection company, and fictitious entities. Plaintiffs alleged breach of contract, breach of warranty, negligence and violations of the CFA arising from the structural defects they discovered in their home after purchasing it in July 2021. They asserted that BDD and Cappuccio, acting as general contractor, were responsible for the faulty renovations performed on the home, including an unsafe foundation that posed a significant hazard. Plaintiffs reached settlement or assented to voluntary dismissals with prejudice for all defendants, except BDD and Cappuccio.

BDD and Cappuccio moved for summary judgment. Defendants denied liability, asserting they did not personally perform the allegedly defective construction work, maintaining instead that they acted solely as facilitators or supervisors by assisting the previous homeowners in engaging contractors to perform the work. They further contended that any defects should have been discovered before plaintiffs purchased the property, as plaintiffs had the opportunity to conduct a professional home inspection. Defendants also pointed

4

to the certificate of occupancy issued by the City in August, 2015 as evidence that the work performed had complied with building codes at the time of the construction.

Plaintiffs opposed the motion and filed a cross-motion for summary judgment, arguing defendants were not facilitators, but rather the actual general contractors responsible for overseeing and ensuring proper execution of the house lift and renovations. They contended that as the general contractor, BDD was responsible for ensuring the work was performed correctly and should be held liable for resulting defects. Toward this end, plaintiffs presented with their cross-motion documentary evidence, including construction permits, invoices, and correspondence to show that BDD was actively involved in the project—from securing permits to coordinating subcontractors. Plaintiffs further argued that under New Jersey case law, principally Aronsohn v. Mandara, 98 N.J. 92 (1984), subsequent homeowners may bring claims against contractors for defective construction, even absent privity of contract. In support of their CFA claim, plaintiffs alleged that Cappuccio personally misrepresented his credentials, falsely claiming certification under New Jersey's Home Elevation Contractor Act (N.J.S.A. 13:45A-17A; N.J.S.A. 56:8-138.2) when he was not actually certified, a violation of the CFA.

A-2554-23

Following oral argument, the trial court granted summary judgment in favor of BDD and Cappuccio, dismissing all claims against them. In particular, the court found the facts of this case distinguishable from those in <u>Aronsohn</u>, concluding that privity of contract was required for plaintiffs to sustain their breach of contract and breach of warranty claims. The court also rejected the negligence claim, finding that BDD's role as general contractor did not create an independent duty to plaintiffs absent a contractual relationship with them. Regarding the consumer fraud claim, the court ruled that plaintiffs did not provide any credible evidence that BDD misled, deceived, misrepresented, or omitted any material fact to plaintiff. To the contrary, the court found the parties had never communicated; absent communication, there was no misrepresentation. Finally, the court found insufficient evidence that plaintiff had relied on any purported misrepresentation or omission by the defendants when plaintiffs purchased the home.

This appeal is unopposed. Counsel for BDD and Cappuccio filed a notice of appearance and submitted a request for an extension of time to file a brief. Notwithstanding the extension, no brief was submitted and, as a result, the court entered an order suppressing a brief by BDD and Cappuccio.

A-2554-23

II.

Breach of Contract

We review the disposition of a summary judgment de novo, applying the same standard used by the motion judge. Townsend v. Pierre, 221 N.J. 36, 59 (2015). Like the motion judge, we view "the competent evidential material presented . . . in the light most favorable to the non-moving party, [and determine whether it is] sufficient to permit a rational factfinder to resolve the alleged dispute issue in favor of the non-moving party." Town of Kearny v. Brandt, 214 N.J. 76, 91 (2013) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)); see also R. 4:46-2(c).

The court cannot resolve contested factual issues but instead must determine whether there are any genuine factual disputes. Pantano v. N.Y. Shipping Ass'n, 254 N.J. 101, 115 (2023). If there are materially disputed facts, the motion for summary judgment should be denied. Ibid. (quoting Judson v. Peoples Bank & Tr. Co. of Westfield, 17 N.J. 67, 73 (1954)) ("The role of the judge in that procedure is to determine whether there is a genuine issue as to any material fact, but not to decide the issue if [the judge] finds it to exist."); Brill, 142 N.J. at 540 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

Turning to the merits, our Supreme Court held in <u>Aronsohn v. Mandara</u> that the "privity requirement should be abandoned in suits brought by a homeowner against a contractor for violation of an implied promise of good workmanship. To require privity . . . would defeat the purpose of the implied warranty of good workmanship" and consequently "leave innocent homeowners without a remedy for negligently built structures[.]" 98 N.J. at 102. The Court held:

> [w]hen . . . there is no express contractual provision concerning workmanship, the law implies a covenant that the contract will be performed in a reasonably good and workmanlike manner. The agreement between defendant and the [original homeowners] . . . contained an implied promise by defendant to construct the patio in a workmanlike fashion . . . If the [original homeowners] . . . had discovered that the patio had been negligently built, defendants would have been liable to them[.]
>
> . . . .
>
> The question . . . is whether the contractor should be immunized from his contractual obligations to have performed his work in a workmanlike, non-negligent manner simply because the original owner or buyer transferred the property to a successor. We think not, <u>at least in the absence of a nonassignability clause in the contract.</u>
>
> [<u>Id.</u> at 98 (Emphasis added).]

A-2554-23

A question remains as to whether applicability of Aronsohn depends on the presence of a nonassignability clause or on an express warranty provision in the contract. Aronsohn addressed the issue of assignability of rights and warranty of good workmanship in the context of a commercial transaction, i.e., where there was a contractual provision between the parties. Id. at 107. Aronsohn does not address these rights in the context of a negligence claim. Ibid. Indeed, the Court wrote:

> [A] contractor may be liable to third persons who suffer personal injury and property damages as a proximate result of a contractor's negligent workmanship after he has completed the job.
>
> However, what is involved here is essentially a commercial transaction . . . We do not intend to exclude the possibility that a cause of action in negligence would be maintainable. However, we do not need to decide the validity of plaintiffs' negligence claim, since [] the contractor's negligence would constitute a breach of the contractor's implied promise to construct the patio in a workmanlike manner.
>
> [Ibid. (internal citations omitted).]

As such, Aronsohn first looks to the terms of the contract between the contractor and original homeowner, as that contract "would set forth the nature and scope of the contractor's duties." Id. at 98. Only thereafter does the Court

9

consider the terms of the home sale contract between original homeowner and subsequent purchaser.

Ordinarily, a contractual right is assignable, manifesting an intention to transfer the assignor's right to another party and thereby extinguishing the assignor's right to performance. Restatement (Second) of Contracts § 317 (Am. L. Inst. 1981). A contractual right can be assigned unless the substitution materially changes the right of the obligor, the assignment is forbidden by statute or on grounds of public policy, or the "assignment is validly precluded by contract." Id. at § 317(2). "If the contract contains no prohibition on assignment, [i.e., no nonassignability clause,] such rights may be assigned[.]" See 4 Corbin on Contracts §§ 857, 872, 873 (1951).

In the context of a contract between contractor and homeowner, a contractor remains free to impose "limitations or restrictions on his obligations that could be binding on a subsequent purchaser, provided they d[o] not contravene public policy." Aronsohn, 98 N.J. at 103. However, and most relevant here, Aronsohn held that absent any provision prohibiting the assignment of contractual rights, there is "no compelling policy reason justifying a bar to the assignment of those rights." Id. at 99. Specifically, Aronsohn addresses instances: (1) where there is an "absence of a nonassignability clause"

between original homeowner and contractor, and (2) where "there is no express contractual provision concerning workmanship" and, in such instances, "the law implies a covenant that the contract will be performed in a reasonably good and workmanlike manner." Id. at 98. The contractor is not "immunized from his contractual obligations to have performed his work in a workmanlike, non-negligent manner simply because the owner or buyer transferred the property to a successor." Id. at 99.

Contract principles regarding assignability of rights likewise apply to a contract for sale of a home by its current owners to a subsequent purchaser in that the current owner could conceivably limit any claims by the subsequent homeowners against the contractor. That is, if a purchase agreement between homeowners expressly refers "to certain limitations in the contractor's contract with the [current owners] concerning the extent and nature of the contractor's warranty, [the subsequent purchasers] might equitably be bound by those restrictions." Id. at 100.

Accordingly, pursuant to Aronsohn, if there is no nonassignability clause between contractor and current homeowner, and if there is no express provision of good workmanship, then the subsequent purchaser receives the benefit of an implied warranty of good workmanship. Id. at 99. Conversely, if there is a

nonassignability clause between contractor and current homeowner, then the subsequent purchaser is without recourse because there are no rights to be transferred or to flow through the purchase agreement between the current and subsequent homeowners; the contractor properly limited and restricted his obligations to a subsequent purchaser. Id. at 103. However, we are quick to note that a contractor's potential liability for poor workmanship as a matter of contract does not extend in perpetuity. See Daidone v. Buterick Bulkheading, 191 N.J. 557, 566 (2007). "The Statute of Repose provides that no action for construction defects shall be brought against a designer or contractor more than ten years 'after the performance or furnishing of such services and construction.'" Ibid. (citing N.J.S.A. 2A:14-1.1(a)).

Here, plaintiffs seek the benefit of the bargain they made in the agreement to purchase their home. A home inspection did not reveal defects in the home at the time of purchase. Because the contract between BDD and Coughlin did not contain a nonassignability clause, plaintiffs would be entitled to an implied warranty of good workmanship pursuant to Aronsohn. A pivotal factor in this case is that there was an express warranty of good workmanship in the contract between BDD and Coughlin, and therefore the trial court decided plaintiffs were not entitled to relief under Aronsohn. This reasoning is erroneous. The

applicability of <u>Aronsohn</u>, as a case sounding in contract, hinges on whether there is a nonassignability clause. The presence or absence of an express warranty is of no moment. If there is no nonassignability clause and no express warranty, then <u>Aronsohn</u> applies, and the subsequent purchaser receives the benefit of an implied warranty of good workmanship. In other words, under <u>Aronsohn</u>, the presence of an express warranty is not determinative of the transfer of rights. Further, if there is no nonassignability clause but there is an express warranty provision, then the subsequent purchaser receives the benefit of the terms of the express warranty provision that was contemplated in the contract between contractor and the current homeowner and is restricted to the terms of that provision.

Accordingly, because the contract between BDD and Coughlin did not contain a nonassignability clause but did contain an express warranty provision, plaintiffs must receive the benefit of the express warranty that was agreed upon between BDD and Coughlin. However, the benefit conferred to plaintiffs via the express warranty comes not from the law under <u>Aronsohn</u>. Rather, the benefit conferred to plaintiff comes from bedrock contract principles. "There would certainly be no problem with enforcing such assignment if the contract between the contractor and the homeowner contained an express provision

13

authorizing assignment to a successor owner of the homeowner's rights against the contractor." Aronsohn, 98 N.J. at 99 (citing Restatement (Second) of Contracts § 317). "If the contract contains no prohibition on assignment, such rights may be assigned in the absence of any public policy reason to the contrary." Aronsohn, 98 N.J. at 99 (citing 4 Corbin on Contracts §857, at 410, § 872, at 485-86, § 873, at 494.)

Moreover, "the transfer or conveyance of [] property is indicative of [an] intent to assign to the buyers their right of action to enforce promises made with respect to that property." Id. at 100 (citing 3 H. Tiffany, Real Property § 849 at 444 (3d ed. 1939)). As the Court in Aronsohn states, once a seller sells their house to a buyer, the seller "no longer ha[s] any interest in retaining for themselves the right to have had [the construction] built in a nonnegligent manner. Rather, it is reasonable to infer that they transferred any such claim to [the buyer]. The transfer or conveyance of their property is indicative of their intent to assign to the buyers their right of action to enforce promises made with respect to that property." Ibid.

In sum, the applicability of the Court's holding in Aronsohn hinges on the presence or absence of a nonassignability clause; a nonassignability clause is the gatekeeping mechanism by which a contractor can limit his liability to a

14

subsequent purchaser. Absent a nonassignability clause, the current homeowner's rights will flow to the subsequent purchaser as a matter of fundamental contract principles. Whether those rights include an express warranty of workmanship is of no importance (other than to limit the extent of the warranty), as Aronsohn ensures the law will impose, at the very least, an implied warranty on the contractor for the benefit of a subsequent purchaser as a matter of public policy. And the contractor remains protected by the Statute of Repose, limiting his liability to ten years.

Accordingly, as to plaintiffs, the trial court erred in granting summary judgment to BDD and Cappuccio as a matter of law. The trial judge appropriately declined to apply Aronsohn, though under an improper rationale. Aronsohn need not be applied because the absence of a nonassignability clause in the BDD-Coughlin contract, considered together with the presence of an express warranty provision, permits plaintiffs' breach of contract claim to move forward based in fundamental contract principles alone.

Turning to the elements of a breach of contract claim required for a plaintiff to make a prima facie showing, the first element requires establishing that the parties entered into a contract containing certain terms, or as a proxy, that the contractual rights were assigned to the plaintiff.

> [F]irst, that 'the parties entered into a contract containing certain terms'; second, that 'plaintiffs did what the contract required them to do'; third, that 'defendants did not do what the contract required them to do,' defined as a 'breach of contract'; and fourth, that 'defendants' breach, or failure to do what the contract required, cause a loss to the plaintiffs.'
>
> [Goldfarb v. Solimine, 254 N.J. 326, 338-39 (2021) (quoting Globe Motor Co. v. Igdalev, 225 N.J. 469, 482 (2018)).]

Regarding the first prong, plaintiffs receive the benefit of assuming the Coughlins' rights in the BDD-Coughlin contract because there was an absence of a nonassignability clause. Regarding prongs two and three, the BDD-Coughlin contract expressly warranted "[t]he services provided hereunder shall be performed in a timely, professional manner and in accordance with the highest industry standards." As such, there was an express covenant that the work would "be performed in a reasonably good and workmanlike manner." Aronsohn, 98 N.J. at 98. The builder's warranty "flow[s] with the ownership despite the absence of privity between the contractor and the present owner." Id. at 101. Plaintiffs bear the burden at trial to demonstrate that BDD violated the express warranty provision in the BDD-Coughlin contract, resulting in the fourth prong, damages to plaintiffs. BDD's argument that a CO was issued by the City and that no defects were observed by the home inspection company at

16

time of purchase will be factual determinations to be made at trial, not to be considered under this court's review of a summary judgment ruling.

The Negligence Claim

Aronsohn did not establish a new negligence standard to be applied to a breach of contract claim. Rather, it held that a contractor may be liable to a subsequent purchaser for breaching an implied duty of good workmanship. The implied warranty[1] adopted in Aronsohn is grounded on contract law, not negligence principles. See Saltiel v. GSI Consultants, Inc., 170 N.J. 297, 316 (2002) ("In commercial transactions the law may recognize certain implied contractual obligations, such as a builder's obligation to construct a building or structure in a workmanlike fashion.") (citing Aronsohn, 98 N.J. at 107). Therefore, a failure to complete tasks or meet the terms of the contract is a breach of contract, not negligence. Additionally, where there is the existence of an express warranty regarding workmanship, any negligent completion of the work described in the contract would be evidence of a breach of contract. Aronsohn, 98 N.J. at 107.

At the same time, Aronsohn recognized that a contractor may separately be responsible in tort for negligence caused to a third party regardless of whether

---

[1] As noted above, the operative warranty here is express, not implied.

there is privity. Id. at 106 (citing Schipper v. Levitt & Sons, Inc., 44 N.J. 70 (1965)). In cases where a plaintiff brings a negligence claim in addition to a breach of contract claim, "a tort remedy does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by the law." Saltiel, 170 N.J. at 316 (citing New Mea Constr. Corp. v. Harper, 203 N.J. Super. 489, 493-94 (App. Div. 1985)). Aronsohn did not preclude "the possibility that a cause of action in negligence would be maintainable" but instead decided the plaintiff's negligence claim because the contractor's negligence constituted a breach of warranty in contract. Aronsohn, 98 N.J. at 107. Economic damages "traditionally have not been entitled to protection against mere negligence" and, therefore, when addressing economic losses in commercial transactions, contract theories are better suited than tort-based principles. Spring Motors Distributors, Inc. v. Ford Motor Co., 98 N.J. 555, 579 (1985).

"Notwithstanding the language of the . . . complaint sounding in tort, the complaint essentially arises in contract rather than tort and is governed by the contract." Wasserstein v. Kovatch, 261 N.J. Super. 277, 286 (App. Div. 1993). See also New Mea Contr., 203 N.J. Super. at 494 (claim against the principal of a construction company for negligent supervision in the construction context

sounds in contract, not in tort, despite the characterization of the claim as being one for negligent supervision).

Here, the BDD-Coughlin contract contained an express provision governing good workmanship. It follows that any breach of a contractual provision would be a breach of contract, not a breach of duty based in tort. "The demarcation of duties arising in tort and those arising in contract is often indistinct, but one difference appears in the interest protected under each set of principles." Livingston Bd. of Educ. v. U.S. Gypsum Co., 249 N.J. Super. 498, 1 (App. Div. 1991) (quoting Spring Motors, 98 N.J. at 579). "Tort principles, such as negligence, are better suited for resolving claims involving unanticipated physical injury, particularly those arising out of an accident. Contract principles . . . are [] more appropriate for determining claims for consequential damage that the parties have, or could have, addressed in their agreement." Spring Motors, 98 N.J. at 579-80.

Should a plaintiff choose to pursue a breach of contract claim and also pursue a negligence in tort claim, a plaintiff will be prevented from "double recovery" or redundant damages when the same evidence supports damage claims under two different sets of law. Taylor v. Mertzger, 152 N.J. 490, 509 (1998).

A-2554-23

Plaintiffs here seek the benefit of the bargain they made in the contract for the purchase of their home, which is based on Coughlin's contract with BDD. As such, the damages allegedly incurred by plaintiffs does not involve personal physical injury or property damage arising out of an accident but rather a breach of an express warranty of good workmanship. Where plaintiffs wish to proceed with a negligence in tort claim, as an alternative to theory to their breach of contract claim, they must make a prima facie case demonstrating that at a duty of care was owed by defendant to plaintiff, that there was a breach of that duty by defendant, and that there was foreseeable injury to plaintiff proximately caused by defendant's breach. Endre v. Arnold, 300 N.J. Super. 136, 142 (App. Div. 1997). "Whether a duty exists is solely a question of law to be decided by a court," Ibid., and "involves a weighing of the relationship of the parties, the nature of the risk, and the public interest in the proposed solution." Kelly v. Gwinnell, 96 N.J. 538, 544 (1984). Extending every favorable inference to plaintiffs, the trial court correctly determined no such showing was made.

Further, a tort remedy does not arise from a contractual relationship "unless the breaching party owes an independent duty imposed by the law[.]" Saltiel, 170 N.J. at 316. For this reason, our Supreme Court has expressed principles, often referred to as the Hopkins factors, to guide a court in

determining if the court should imply a duty. Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 439 (1993).

> (1) the nature of the underlying risk of harm, that is, its foreseeability and severity, (2) the opportunity and ability to exercise care to prevent the harm, (3) the comparative interests of, and the relationships between or among, the parties, and (4) ultimately, based on the considerations of public policy and fairness, the societal interest in the proposed solution.
>
> [J.S. v. R.T.H., 155 N.J. 330, 337 (1998) (citing Hopkins, 132 N.J. at 439).]

The foreseeability and severity of the underlying risk of harm, as described in the first factor, is "crucial" in determining the imposition of a duty. Carter Lincoln-Mercury, Inc. v. EMAR Grp. Inc., 135 N.J. 182, 194 (1994). In its analysis of whether BDD owed a duty to plaintiffs, the trial court first determined that any such duty should be evaluated "during the timeframe when [BDD] performed the work." This determination is reasonably interpreted from "well-established principles [that] a contractor has a duty . . . to carry out his undertaken work in a careful and prudent manner, and he may be responsible to third persons for the personal injuries . . . caused for his failure to exercise that care." Aronsohn, 98 N.J. at 105.

The trial court reviewed the first Hopkins factor regarding foreseeability via the timeframe in which BDD conducted its work. Because the court found

there was no evidence of damage or danger during the five-year ownership period by Coughlin, no defect identified by the City at the time the CO was issued, and no evidence of damage or defect at the time of purchase of the home by plaintiffs (as plaintiffs' home inspector did not report damages), it was reasonable to find that BDD had no knowledge, actual or constructive, that there was damage to the structure. Therefore, the court properly found plaintiffs failed to demonstrate foreseeability of harm under the first Hopkins factor and likewise failed to demonstrate BDD owed them a duty in tort. The issuance of a CO at the completion of the construction is not in itself determinative of whether BDD owed a duty to plaintiffs, however, it was a fact informing the court's determination that a risk of harm was not foreseeable.

Finally, we reiterate that plaintiffs' appeal is unopposed by BDD.

The Consumer Fraud Claim

The CFA, initially adopted in 1960, prohibits:

> [t]he act, use or employment by any person of any commercial practice that is unconscionable or abusive, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise of real estate . . . whether or not any person has in fact been misled, deceived or damaged thereby[.]

22

[N.J.S.A. 56:8-2.]

A private right of action was added to the CFA in 1971. Robey v. SPARC Group LLC, 474 N.J. Super. 593, 601 (App. Div. 2023), certif. granted 254 N.J. 202 (2023) (noting the CFA was amended to allow private causes of action). The private-right provision allows any person who suffers an "ascertainable loss" as the result of an "unlawful practice" to sue and, if successful, the person is entitled not only to recovery of the monies lost as part of the underlying transaction, but also to treble damages, attorneys' fees, and costs. N.J.S.A. 56:8-19; see Neveroski v. Blair, 141 N.J. Super. 365, 381-82 (App. Div. 1976). The private right of action requires proof of three elements: (1) an "unlawful practice" by the defendant; (2) an "ascertainable loss" by the plaintiff; and (3) a causal relationship between the two. N.J.S.A. 56:8-2; see Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 557 (2009).

The primary definition of "unlawful practice" is contained in N.J.S.A. 56:8-2, and includes unconscionable or abusive commercial practices, deception, misrepresentation, false statements and promises, and omissions. See also Cox v. Sears Roebuck & Co., 138 N.J. 2, 17 (1994). When the alleged violation is an affirmative act, "intent is not an essential element and the plaintiff need not prove that the defendant intended to commit an unlawful act." Ibid.;

Gennari v. Weichert Realtors, 148 N.J. 582, 605 (1997). However, when the alleged fraud is considered an omission, a "plaintiff must show that defendant acted with knowledge, and intent is an essential element of the fraud." Chattin v. Cape May Greene, Inc., 124 N.J. 520, 522 (1991).

The CFA is applicable to home-improvement matters. Cox, 138 N.J. at 17. The Contractor's Registration Act provides consumers with additional protection by requiring home-improvement contractors to register and maintain insurance, N.J.S.A. 56:8-136 to -152, and a separate registration provision applies specifically to "home elevation contractors," who must also comply with all other requirements of the Contractor's Registration Act. N.J.S.A. 13:45A-17A; N.J.S.A. 56:8-138.2. The Registration Act requires written contracts in most circumstances, N.J.S.A. 56:8-151, and any violation of the Act is an "unlawful practice" and is a violation of the CFA. N.J.S.A. 56:8-146a.

The Contractor's Registration Act applies whenever a home-improvement contractor is dealing directly with a residential property owner. See Murnane v. Finch Landscaping, LLC, 420 N.J. Super. 331, 338-39 (2011). In Murnane, the court rejected a contractor's argument that a homeowner who had contracted with multiple contractors for a single project should be characterized as a "general contractor" and therefore was not entitled to the protections of the

Contractor's Registration Act and the CFA. Ibid. (holding that a plaintiff homeowner has "a direct contractual relationship with defendant, [then] even if plaintiff could be viewed as a general contractor with respect to the improvements to his home, he [i]s entitled to the protections of the CFA").

Here, plaintiffs argue the BDD-Coughlin contract expressly provided BDD and Cappuccio were responsible for managing and being on-site during the project and that the work performed would be in accordance with the highest industry standards. BDD disputed that assertion at the trial level, claiming it had little-to-no oversight or involvement with the project, even though such claim was contrary to the language of the contract. BDD argued, "We assisted the homeowner in finding contractors that could perform the work within the budget that [Coughlin] set. And we ultimately did not perform any of the work. We did not inspect the work." Based on these competing assertions by the parties, there remained a contested issue of fact for the trial court to decide. From the record before us, it remains unclear what work BDD physically performed.

Under the summary judgment standard, the court must afford all favorable inferences to plaintiffs as the non-moving party. Even assuming BDD acted as a general contractor, the trial court properly found plaintiffs failed to present

any credible evidence to support a CFA claim, asserting that BDD misled, deceived, misrepresented, concealed, or omitted any material facts.

On appeal, plaintiffs assert Cappuccio falsely represented his certification under the Contractor's Registration Act, N.J.S.A. 13:45A-17A, allegedly falsely claiming during the permitting process that he was the contractor hired to undertake the home elevation and was in compliance with all applicable regulations. The trial court affirmatively found plaintiffs "did not provide credible evidence to support a CFA claim whereby the individual [d]efendants misled, deceived, misrepresented, concealed, or omitted any material fact to [p]laintiffs related to the renovations of the property." Moreover, even assuming all reasonable inferences in plaintiffs' favor as required, plaintiffs' argument fails as a matter of law. That is, a fraud claim requires an unlawful practice by defendant, an ascertainable loss, and a causal relationship between the two. Here, given the assumption that BDD committed an unlawful practice by misrepresenting licensure, and given the assumption that plaintiffs suffered an ascertainable loss in the amount of $77,500 as determined by their expert, plaintiffs did not demonstrate a causal connection between the two. There is no evidence in the record that BDD acting as an improperly registered contractor resulted in plaintiffs' loss. The record reflects that BDD did not conduct the

A-2554-23

construction work; subcontractor Baumgartner conducted the work. Because nominal violation of the statute did not cause an ascertainable loss, there can be no private right of action based on the unlawful practice at issue. Accordingly, the trial court did not err in dismissing plaintiff's CFA claim with prejudice.

III.

Count III of plaintiffs' complaint asserts claims for both breach of contract and negligence against the entity identified as "Boardwalk," which, pursuant to paragraph five of the complaint, is defined to include BDD and Boardwalk Builders, but not Cappuccio in his individual capacity. On remand, BDD and Cappuccio remain defendants solely with respect to the surviving claim for breach of an contractual express warranty set forth in Count III. We express no opinion as to Cappuccio's role, if any, in his personal capacity. The trial court's dismissal of the negligence claim contained within Count III is affirmed.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. The trial court shall conduct a case management conference within thirty days of this opinion.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

27